UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

| | |
|---|---|
| HENRY HUSEYIN CUHADAR, GURHAN ERGEZER, and MAUREEN FREDERIQUE, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiffs, | : : |
| -against- | : : |
| SAVOYA, LLC, And DOES 1 THROUGH 50, inclusive | : : : |
| Defendants | : : |

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

-------------------------------------------------------------X

Plaintiffs Henry Huseyin Cuhadar, Gurhan Ergezer, and Maureen Frederique, by their attorneys, Bryan Schwartz Law, P.C., individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## I.    NATURE OF ACTION

1.    This is a collective and class action to recover unpaid wages brought by individual and representative Plaintiffs Henry Huseyin Cuhadar, Gurhan Ergezer, and Maureen Frederique, on their own behalf and on behalf of the proposed Collective and New York Classes identified below. Plaintiffs and the putative class members work or worked for Defendant Savoya, LLC ("Savoya" or "Defendant") as drivers ("Drivers"). Savoya provides chauffeured ground transportation services to high-end clients in the New York City metropolitan area, and nationwide. Upon information and belief, Savoya receives its entire income and revenue through providing transportation services, primarily through the proposed class of workers who drive cars on its behalf.

1

2.      The Collective Class is made up of all persons who worked for Savoya as Drivers in the State of New York at any time within three years prior to this action's filing date through the date of trial in this action (the "Collective Class Period").

3.      The New York Class is made up of all persons who worked for Savoya as Drivers in the State of New York at any time within six years prior to this action's filing date through the trial of this action (the "New York Class Period").

4.      The Subdriver Subclass is made up of all persons who worked for Savoya under a Driver that entered into a direct contractual relationship with Savoya. To begin work with Savoya, Savoya required all Drivers to enter the name of their corporate entity or franchise as the signing party. Some of these Driver corporate entities employed Subdrivers, who also drove for and were controlled by Savoya throughout the relevant statutory period.

5.      Plaintiffs Cuhadar, Ergezer, and Frederique worked for Savoya as Drivers throughout the New York City area. Throughout the relevant time period, Savoya has controlled the terms and conditions of Plaintiffs' employment, and the employment of similarly-situated Drivers, by, among other things: directing which customers the Drivers should pick up, at what time, and at what location; punishing Drivers who refuse certain jobs by denying them future assignments; setting the prices of all fares; mandating Drivers to maintain a $1 million minimum liability insurance policy for their vehicles, mandating that Drivers wear a formal uniform of a black-suit, tie, and shoes; mandating the use of certain vehicle models in certain colors and the use of certain dispatch equipment and software; and creating extensive rules and regulations of conduct for Drivers.

6.      During the Collective Class Period and the New York Class Period, Savoya willfully misclassified its Drivers as independent contractors, a decision which resulted in the

denial of overtime compensation and minimum wage payments to Savoya's Drivers in New York. In particular, Savoya has: failed to reimburse or indemnify Drivers for employment-related expenses and losses; taken wrongful deductions from Drivers' wages; coerced Drivers to purchase necessary services and items; failed to pay Drivers minimum wage and overtime compensation; and failed to track and document Drivers' actual hours worked, as required by federal and New York law. Upon information and belief, this misclassification policy has been in effect before the relevant state and federal statutory periods.

7.    This lawsuit seeks payment of all unpaid overtime and minimum wage compensation, together with liquidated damages and interest, and the recovery of all unlawful deductions that Savoya has taken from the wages of Plaintiffs and the proposed class members during the statutory period, and unpaid reimbursements for Savoya-related business expenses. Plaintiffs bring this action on behalf of themselves and similarly situated current and former Drivers for Savoya pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiffs also seek attorneys' fees and costs. The collective class claims in this action are brought pursuant to FLSA, 29 U.S.C. § 216(b).

8.    Plaintiffs also bring claims on behalf of themselves and similarly situated current and former employees of Carey pursuant to the New York State Labor Law ("NYSLL"), which provides for payment of overtime and minimum wages to employees, prohibits unlawful deductions from employees' wages, and requires reimbursement of employer-related costs. *See* NYSLL §§ 190 *et seq.*; *id.* §§ 650 *et seq*. The New York class claims in this action are brought pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Drivers employed by Defendant in New York.

## II.    <u>JURISDICTION AND VENUE</u>

9.    This Court has subject matter jurisdiction because Plaintiffs bring claims under the Fair Labor Standards Act, 29 U.S.C. § 216(b). *See* 28 U.S.C. § 1331. The representative Plaintiffs have signed a consent form to join this lawsuit, attached hereto as Exhibit A.

10.    This Court has subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), in that the state law claims are so related to Plaintiffs' FLSA claims as to be part of the same case or controversy under Article III of the United States Constitution.

11.    Venue is proper within this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred within this District.

12.    This Court has personal jurisdiction over Savoya, because, upon information and belief, Savoya is engaged in a continuous and systematic course of doing business in New York, and transacts business in New York that forms the basis of this suit.

## III.    <u>PARTIES</u>

13.    Plaintiff Henry Huseyin Cuhadar is a resident of Smithtown, New York, located within Suffolk County, in the Eastern District of New York. Defendant employed Mr. Cuhadar as a Driver from March 2019 to May 2023, driving throughout the New York metropolitan area. Plaintiff entered into a contractual agreement with Savoya under the name of his corporate entity, HRC Enterprise Group. Plaintiff Cuhadar brings his claims on behalf of himself and the Collective and New York Classes. A written consent form for Plaintiff Cuhadar is attached as part of Exhibit A.

14.    Plaintiff Gurhan Ergezer is a resident of West New York, located in Hudson County, New Jersey. Defendant, through Plaintiff Cuhadar, employed Mr. Ergezer from June 2022 to December 2022, driving throughout the New York metropolitan area. Plaintiff Ergezer drove for Savoya as a Subdriver under Plaintiff Cuhadar's corporate entity, HRC Enterprise Group. Plaintiff brings his claims on behalf of himself, the Collective and New York Classes, and the Subdriver Subclass. A written consent form for Plaintiff Ergezer is attached as part of Exhibit A.

15.    Plaintiff Maureen Frederique is a resident of Laurelton, New York, located within Queens County, in the Eastern District of New York. Defendant employed Ms. Frederique as a Driver from November 2017 to March 2020. Plaintiff entered into a contractual agreement with Savoya under the name of her corporate entity, More Hits Entertainment, LLC. Plaintiff Frederique brings her claims on behalf of herself and the New York Class. A written consent form for Plaintiff Acuna is attached as part of Exhibit A.

16.    Defendant Savoya, LLC is a Delaware corporation with its principal place of business in Dallas, Texas. Savoya does business in New York and nationwide, where it provides chauffeured transportation services for corporate and individual clients.

17.    Defendants Does 1-100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities herein. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages sustained by Plaintiffs and the Class Members were proximately caused by such Doe Defendants.

18.    Plaintiffs are informed, believe, and thereon allege, that each of the Defendants herein was, at all times relevant to this action, the agent, representing partner, and/or joint venturer

5

of the other Defendant. Plaintiffs are further informed, believe, and thereon allege, that each of the Defendants herein gave consent to, ratified and authorized the acts alleged herein.

## IV.    FACTUAL ALLEGATIONS

19.    Savoya operates a chauffeured limousine and luxury car transportation business. Upon information and belief, Savoya derives nearly all of its revenue from the provision of transportation services. Savoya relies on dozens of Drivers in New York and hundreds of Drivers nationwide to chauffer its clients. Notwithstanding that Savoya's core business is providing chauffeur services, Savoya considers the Drivers who provide those services independent contractors rather than employees.

20.    Savoya pays its Drivers for each trip according to a predetermined Inclusive Rate Schedule, which provides for flat-fee payments based on distance or hourly payments for trips lasting more than two hours.

21.    Savoya retains and exercises extensive control over the day-to-day work of its Drivers, who are assigned specific customers, locations, and times for picking them up and dropping them off each day. Although, nominally, Drivers have the right to decline assignments, in practice, Drivers who decline jobs are penalized by not receiving future jobs from Savoya.

22.    Savoya enforces a strict dress code for its Drivers, requiring them to wear a black suit, black tie, black belt, black socks, and black shoes.

23.    Savoya requires its Drivers to provide their own vehicles, which must be black (except for vans and motor coaches), less than three years old, and free of any visible damage to the exterior or interior. Savoya maintains a list of approved sedans and sport utility vehicles. Savoya requires that Drivers adopt environmentally responsible maintenance procedures, including the recycling of used oil, batteries, antifreeze, and tires.

24.     Savoya also requires that the vehicle interiors follow specified standards. Savoya requires that its Drivers' vehicles be stocked with an umbrella, bottled water, newspaper, maps, GPS device, and a detailing kit. Vehicles must further be free of magazines, tissues, candy, promotional materials, or any items hanging from the rearview mirror. Vehicles must be designated as non-smoking and have a neutral odor, although no visible air fresheners are permitted.

25.     Savoya further dictates how Drivers must behave prior to and during trips. Specifically, when waiting for the client, Drivers are required to use tablets with computer-generated signage; hand-written signs are prohibited. During the trip, Savoya requires that Drivers not speak unless spoken to, that they confirm radio and temperature preferences with the passenger during the first five minutes of the trip, and that they never discuss rates with passengers.

26.     Savoya closely monitors Drivers during trips, requiring that Drivers keep the Savoya app loaded and that they use status update buttons indicating when the driver is onsite, when the passenger is onboard, and when the passenger is dropped off.

27.     Savoya mandates its Drivers purchase and maintain liability insurance coverage in a minimum amount set by Savoya. Coach buses and mini-buses require a minimum $5 million liability policy and all other vehicles require a minimum $1 million liability policy. Drivers must list Savoya as an Additional Insured on the policy. Drivers must select an insurance carrier with an A.M. Best rating of A-VII.

28.     Savoya maintains the right to terminate Drivers, without cause, upon 30 days' written notice.

29.     Plaintiffs, and, upon information and belief, many Drivers, have worked full time for Defendant and do not have significant alternative employment while working for Savoya.

30. As a result of Savoya's misclassifications of its Drivers as independent contractors, Savoya has failed to reimburse Drivers for employment-related expenses, including: cost of obtaining their vehicles; operation costs associated with the vehicle such as fuel, maintenance, repair, cleaning, and licensing; insurance premiums; costs of purchasing and maintaining service for cellular phones and tablets required by Savoya; and costs of keeping vehicle stocked with umbrella, bottled water, and newspapers.

31. As a result of Savoya's misclassifications of its Drivers as independent contractors and the long hours Savoya has required its Drivers to work, Savoya has willfully and knowingly failed to pay overtime compensation to Plaintiffs and similarly situated Class Members for hours worked in excess of 40 hours per week.

32. As a result of Savoya's misclassification of Drivers as independent contractors and the long hours Savoya has required the Drivers to work, and taking into account the employment-related expenses and deductions the Drivers are forced to bear, Savoya has failed to pay minimum wage compensation to Plaintiffs and similarly situated Class Members for all hours worked.

33. Savoya additionally failed to pay Drivers for all hours worked by requiring Drivers to arrive at jobs 15 minutes early, referred to as "spot time," but failing to provide Drivers with any compensation for that time.

34. Upon information and belief, the Drivers for Savoya were not able to cruise for customers on their own, and they could not accept passengers who attempt to hail the Drivers on the street without a prior reservation made through Defendants. Plaintiffs and the Drivers were not permitted to provide services independent of Defendant's dispatch system, through other services like Uber or Lyft, without Defendant's consent, upon threat of discipline. Throughout the relevant

time period, Plaintiffs and the Drivers have depended on Defendants for the opportunity to render their services and receive pay.

35.     Upon information and belief, during the relevant time period, Plaintiffs and the other Drivers have often worked more than ten hours a day and more than 40 hours a week. They have been required by Savoya to work late nights, weekends, and holidays.

36.     As a result of Defendant misclassifying the Class Members as "independent contractors," Defendant has willfully and knowingly failed to pay an additional hour's pay at the minimum hourly wage rate for each day on which Plaintiffs and the Class Members worked ten or more hours.

37.     As a result of Defendant misclassifying the Class Members as "independent contractors," Defendant has failed to itemize the total hours worked on wage statements furnished to Plaintiffs and similarly situated Class Members.  In addition, Defendant has failed to provide annual notices that must be provided to employees containing information required by New York law.

38.     Plaintiffs are informed, believe, and on that basis allege, that as a result of Defendant misclassifying the Class Members as "independent contractors," Defendant has not properly maintained payroll records showing the actual hours worked each day by the Class Members, including Plaintiffs.

## V.    COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiffs bring this action on behalf of themselves and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

**Collective Class**: all persons who worked for Savoya as Drivers in the State of New York at any time within three years prior to the filing of this action through the final disposition of this case.

40.     Upon information and belief, Savoya suffered and permitted Plaintiffs and the Collective Class to work more than 40 hours per week without overtime compensation, and at a rate sometimes below the minimum wage.

41.     Savoya's unlawful conduct has been widespread, repeated, and consistent.

42.     Upon information and belief, Savoya knew that Plaintiffs and the Collective Class performed work that required overtime pay. Savoya has operated under a scheme to deprive these employees of appropriate overtime compensation.

43.     Upon information and belief, Savoya knew that Plaintiffs and the Collective Class members were not paid the minimum wage for all hours worked. Plaintiffs and the Collective Class members routinely earned below minimum wage as a result of the expenses and deductions that Savoya required them to bear.

44.     Savoya misclassified Plaintiffs and the Collective Class members as independent contractors who were not offered the protection of federal minimum wage and overtime laws. Savoya misrepresented to these employees that they were independent contractors and therefore not entitled to minimum wages or overtime pay.

## VI.    CLASS ACTION ALLEGATIONS

45.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

46.     Plaintiffs brings all claims alleged herein under New York law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of all persons who worked in New York as Drivers for Savoya during the Class Period. Plaintiffs seek to pursue their claims on behalf of the following class and subclass:

> **New York Class:** all persons who worked for Savoya as Drivers in the State of New York at any time within six years prior to the filing of this action through the final disposition of this case.

> **Subdriver Subclass:** All New York Class members who worked for Savoya under another Driver who worked with Savoya, at any time within six years prior to the filing of this action through the final disposition of this case.

47.     <u>Numerosity</u>: The Proposed New York Class and Subclass is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and thereon allege, that during the relevant time period, Savoya employed dozens of Drivers who are geographically dispersed and who satisfy the definition of the New York Class Members and the Subclass. The names and addresses of the Class Members are available to Savoya. Notice can be provided to Class Members via first-class mail and/or email using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

48.     <u>Typicality</u>: Plaintiffs' claims are typical of those of the New York Class Members and the Subdriver Subclass. Plaintiffs, like other Class Members and Subclass Members, were subjected to Savoya's common, unlawful policies, practices and procedures. The claims of Plaintiffs are typical of the claims of the Class Members and Subclass Members whose contracts misclassified them as independent contractors. Savoya's common course of unlawful conduct have caused Plaintiffs and similarly situated Class Members (and where applicable, Subclass Members),

11

to sustain the same or similar injuries and damages caused by the same practices of Savoya, including not receiving overtime and minimum wage compensation, accurate wage statements, reimbursements for all necessary business expenses, all wages due upon termination, and similar compensation provided by New York wage law. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Class Members and the Subclass members.

49.    Plaintiff Ergezer, in particular, has claims that are typical of the Subdriver Subclass, because he worked for Savoya under Plaintiff Cuhadar's HRC Enterprise Group, but was nonetheless subject to the control of Savoya.

50.    Adequacy: Plaintiffs Cuhadar, Ergezer, and Frederique are members of the Class, while Plaintiff Ergezer is a member of the Subclass. Plaintiffs do not have any conflicts of interest with the Class and Subclass, and will prosecute the case vigorously on behalf of the Class and Subclass. Plaintiffs will fairly and adequately protect the interests of the members of the Class Members and Subclass Members. Plaintiffs have retained counsel competent and experienced in complex class actions, and in particular, federal and New York wage and hour litigation.

51.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage and hour litigation where individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants, and fear retaliation and blackmailing in their industry. Prosecuting dozens of identical individual lawsuits statewide does not promote judicial efficiency, equity, or consistency in judicial results.

52.    Commonality for the Class: There are questions of law and fact common to Plaintiffs and the Class Members that predominate over any question affecting only individual members of the class. These common questions of law and fact include, without limitation:

a)  Whether Savoya can show that Class Members are free from its direction, supervision, and control when performing work for Savoya;

b)  Whether Savoya can show that Class Members are customarily engaged in an independently established trade or business;

c)  Whether Savoya maintained the right to control Class Members, including a right to terminate Class Members at will;

d)  Whether Savoya has failed to pay Class Members overtime wages for time worked in excess of 40 hours per week in violation of NYSLL § 652 and 12 NYCRR § 142-2.2;

e)  Whether Savoya has failed to pay Class Members appropriate minimum wage compensation for all hours worked in violation of NYSLL § 652;

f)  Whether Savoya has knowingly and intentionally made improper deductions from the compensation paid to the Class Members in violation of NYSLL § 193;

g)  Whether Savoya has knowingly and intentionally failed to pay the Class Members spread of hours pay in violation of NYSLL § 652 and 12 NYCRR § 142-2.4;

h)  Whether Savoya has knowingly and intentionally failed to provide the Class Members with an annual notice for employees containing information regarding conditions and terms of employment, as required by NYSLL § 195;

i)  Whether Savoya has knowingly and intentionally failed to provide the Class Members with itemized statements showing total hours worked with each payment of wages, as required by NYSLL § 195;

j)  The nature and extent of class-wide injury and the measure of damages for those injuries.

k) Whether Savoya's actions described herein were done in a knowing and intentional manner.

53. <u>Commonality for the proposed Subdriver Subclass:</u> Common questions of law and fact exist as to all members of the Subclass, and predominate over any questions solely affecting individual members of that Subclass, including but not limited to: whether Savoya exercised significant direction and control over Subdrivers, despite being working under the corporate entity of another Driver working for Savoya.

54. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

55. Class certification is also appropriate under Fed. R. Civ. P 23(b)(3) because questions of law and fact common to the proposed New York Class (and the proposed Subdriver Subclass) predominate over any questions affecting only individual members of the proposed New York Class (and Subclass), and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices denied the proposed New York Class Members the minimum wage, overtime pay, reimbursements, and other compensation to which they are entitled. The damages suffered by the individual New York Class Members (and Subclass Members) are small compared to the expense and burden of individual prosecution of this litigation especially in light of the minimum wage claims asserted on behalf of the proposed New York Class (and Subclass). Proposed New York

Class members fear workplace retaliation and being "blackballed" from obtaining future employment. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

### FIRST CAUSE OF ACTION
### Failure to Pay Minimum Wage – FLSA
### (Brought on behalf of Plaintiffs and the Collective Class)

56.     Plaintiffs, on behalf of themselves and the Collective Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

57.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent forms are attached hereto as Exhibit A. Plaintiffs anticipate that other individuals will continue to sign consent forms and join as Plaintiffs.

58.     At all relevant times, notwithstanding Defendant's classification of Plaintiffs and similarly situated Drivers as independent contractors, Defendant exercised control over the terms and conditions of their work so that they were actually "employees" within the meaning of 29 U.S.C. § 203(e).

59.     In that regard, Defendant could and did control the appearance of Drivers and their vehicles. Defendant could and did control when and where Drivers worked for Defendant. Defendant could and did exercise significant control over how Drivers performed their work for Defendant, including by dictating Drivers' behavior during rides and monitoring the progress of rides.

60.     At all relevant times, Defendant maintained the right to evaluate performance of Drivers based on client feedback, as well as the right to terminate Drivers at will.

61.     At all relevant times, upon information and belief, Defendant has had gross operating revenues in excess of $500,000.

62.     The FLSA, 29 U.S.C. § 206, requires each covered employer, such as Defendant, to compensate all non-exempt employees at a rate of not less than $7.25 an hour for all hours worked.

63.     During their employment with Defendant, within the applicable statute of limitations, Plaintiffs and the Collective Class Members performed work for Defendant. Despite hours worked by Plaintiffs and Collective Class Members, Defendant willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them the appropriate minimum wage compensation for all hours worked.

64.     As a result of Defendant's willful and unlawful conduct, Plaintiffs and the Collective Class have suffered damages in an amount, subject to proof, to the extent they were not paid minimum wage compensation wages for all hours worked.

65.     By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Collective Class, Defendant failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

66.     Pursuant to 29 U.S.C. §§ 206 and 216(b), Plaintiffs and the Collective Class are entitled to recover the full amount of unpaid minimum wage compensation, liquidated damages, and interest thereon.

67.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a). Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations.

16

68.    Plaintiffs, on behalf of themselves and the Collective Class, seek the recovery of their attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Failure to Pay Overtime Wage – FLSA**
**(Brought on behalf of Plaintiffs and the Collective Class)**

69.    Plaintiffs, on behalf of themselves and the Collective Class, alleges and incorporates by reference the allegations in the preceding paragraphs.

70.    The FLSA, 29 U.S.C. § 207, requires each covered employer, such as Defendant, to compensate all non-exempt employees at a rate of not less than one-and-one-half times the regular rate of pay for work performed in excess of forty hours per work week.

71.    When they worked for Defendant, within the applicable statute of limitations, Plaintiffs and the Collective Class Members often worked in excess of forty hours per workweek. Despite the hours worked by Plaintiffs and the Collective Class Members, Defendant, willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them the appropriate overtime compensation for all hours worked in excess of forty.

72.    As a result of Defendant's willful and unlawful conduct, Plaintiffs and the Collective Class have suffered damages in an amount, subject to proof, to the extent they were not paid overtime wages for all hours actually worked in excess of forty hours per week.

73.    By failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective Class, Defendant has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

74.    Pursuant to 29 U.S.C. §§ 207(a)(1) and 216(b), Plaintiffs and the Collective Class are entitled to recover the full amount of unpaid overtime compensation, liquidated damages, and interest thereon.

75.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a). Because Defendant willfully violated the FLSA, a three-year statute of limitations applies to such violations.

76.    Plaintiffs, on behalf of themselves and the Collective Class, seeks recovery of their attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).


**THIRD CAUSE OF ACTION**
**Failure to Pay Minimum Wage – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

77.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully set forth herein.

78.    At all relevant times, notwithstanding Defendant's classification of Plaintiffs and the Class Members as independent contractors, Defendant exercised control over the terms and conditions of Plaintiffs' and the Class Members' work so that they were actually "employees" within the meaning of NYSLL § 651.

79.    Defendant was Plaintiffs' and the Class Members' "employer" within the meaning of NYSLL § 190.

80.    Defendants Does, as owners and/or officers of Defendant Savoya, were responsible for the wage and hour practices complained of herein and are therefore considered "employers" within the definition of NYSLL § 190.

81.    Pursuant to Section 652 of the NYSLL, the minimum rate of wage for the six years preceding the filing of this complaint was $13.00 per hour until December 31, 2018; $15.00 per hour from January 1, 2019 to December 31, 2023; and $16.00 from January 1, 2024 to the present.

82.    During the Class Period, Plaintiffs and the Class Members have each worked weeks in which they earned less than the applicable minimum wage, after deductions and expenses.

83.    Defendant, by the above acts, has violated NYSLL § 652 and 12 NYCRR § 142-2.1.

84.    Defendants had no good faith basis to believe that their actions were in compliance with the law, within the meaning of NYSLL § 663.

### FOURTH CAUSE OF ACTION
**Failure to Pay Overtime Wage – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

85.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

86.    At all relevant times, Defendant has not paid Plaintiffs and the Class Members at the statutorily required overtime rate of 1.5 times their normal hourly rate for the hours worked in excess of 40 hours in a week.

87.    Defendant, by the above acts, has violated NYSLL § 652 and 12 NYCRR § 142-2.2.

88.    Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 663.

### FIFTH CAUSE OF ACTION
**Failure to Pay Spread of Hours Pay – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

19

89.     Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragraphs as if set forth fully herein.

90.     For each day in which the "spread of hours" from the beginning of Plaintiffs' and the Class Members' day to the end of the day exceeded ten hours, Defendant failed to pay them an additional hour's pay at the minimum hourly wage rate.

91.     Defendant, by the above acts, has violated NYSLL § 652 and 12 NYCRR § 142-2.4.

92.     Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 663.

### SIXTH CAUSE OF ACTION
**Unlawful Deductions - NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

93.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

94.     At all relevant times, notwithstanding Defendant's classification of Plaintiffs and the Class Members as independent contractors, Defendant exercised control over the terms and conditions of their work so that they were actually "employees" within the meaning of NYSLL § 190.

95.     Defendant was Plaintiffs' and the Class Members' "employers" within the meaning of NYSLL § 190.

96.     Defendant Does, as owners and/or officers of Defendants Savoya, were responsible for the wage and hour practices complained of herein and are therefore considered "employers" within the definition of NYSLL § 190.

97.    Pursuant to Section 193 of the NYSLL, Defendant was prohibited from deducting any wages from Plaintiffs' and the Class Members' pay.

98.    Defendant violated Section 193 of the NYSLL by deducting various employment-related expenses, including but not limited to, insurance fees, reservation fees, and credit card fees, and other fines and penalties.

99.    Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 198.

**SEVENTH CAUSE OF ACTION**
**Failure to Reimburse Business-Related Expenses Agreed Upon – NYSLL**
**(Brought on Behalf of Plaintiffs and the New York Class)**

100.    Plaintiffs repeat and re-allege the allegations set forth in the foregoing paragaphs as if set forth fully herein.

101.    At all relevant times, notwithstanding Defendant's classification of Plaintiffs and the Class Members as independent contractors, Defendant exercised control over the terms and conditions of their work so that they were actually "employees" within the meaning of NYSLL § 190.

102.    Pursuant to NYSLL § 198(c)(1), Defendant was obligated to pay for any benefits or wage supplements that it has agreed to provide to its employees.

103.    Under NYSLL § 198(c)(2), the term "benefits or wage supplements" includes the reimbursement of business expenses.

104.    In its contracts with Plaintiffs and Class Members, Defendant agreed to reimburse Plaintiffs and Class Members for (i) airport entrance and exit fees, (ii) parking fees, and (iii) tolls and other charges for the use of roadways.

105.    Defendant violated NYSLL § 198(c)(1) by failing to reimburse Plaintiffs and Class Members all fees and tolls that were owed to them, based on Defendant's agreement with Plaintiffs and Class Members.

106.    Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 198.

**EIGHTH CAUSE OF ACTION**
**Notice and Recordkeeping Requirements – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

107.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if recited at length herein.

108.    Pursuant to NYSLL § 195, Defendant was required to furnish Plaintiffs and the Class Members with an annual notice containing the rate or rates of pay and the basis thereof, whether paid by hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section 191 of the NYSLL; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and such other information as the commissioner deems material and necessary.

109.    Defendant failed to provide Plaintiffs and the Class Members with any such notice at any time during their employment.

110.    Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 198.

## NINTH CAUSE OF ACTION
**Failure to Provide Accurate Wage Statements – NYSLL**
**(Brought on behalf of Plaintiffs and the New York Class)**

111.    Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if set forth fully herein.

112.    Pursuant to NYSLL § 195, Defendant was required to provide Plaintiffs and the Class Members with accurate wage statements setting forth: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

113.    Defendants did not provide accurate wage statements to Plaintiffs and the Class Members for all weeks worked.

114.    Defendant had no good faith basis to believe that its actions were in compliance with the law, within the meaning of NYSLL § 198.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and the above-described Collective and New York Classes, respectfully request judgment and the following specific relief against Defendant as follows:

A.    That the Court determine that this action may proceed as a collective action under 29 U.S.C. § 216(b) of the FLSA;

B.    That the Court determine this action may proceed as a class action under Federal Rule of Civil Procedure 23;

C.    That Defendant's Drivers are found to be employees rather than

independent contractors pursuant to the FLSA and the New York Labor Law;

D.  That Defendant is found to have violated the minimum wage and overtime provisions of the FLSA as to Plaintiffs and the Collective Class;

E.  That Defendant's violations above are found to be willful;

F.  That Defendant is found to have violated the minimum wage, overtime, spread of hours pay, wage deduction, timely payment of wages, and wage statement provisions of the New York labor laws cited above as to Plaintiff and the New York Class (and Subclass);

G.  An award to Plaintiffs and Class Members for the amount of unpaid wages owed, liquidated damages, and penalties where provided by state and federal law, and interest thereon, subject to proof at trial;

H.  That Defendant be ordered and enjoined to pay restitution to Plaintiffs and the New York Class due to Defendant's unlawful activities, pursuant to New York state law cited above;

I.  That Defendant further be enjoined to cease and desist from unlawful activities in violation of state laws cited above;

J.  That the Court grant declaratory relief stating that Defendant's scheme is unlawful;

K.  For an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. 216(b), New York Labor Law §§ 198, 663, and/or other applicable state laws; and

L.  For such other and further relief, in law or equity, as this Court may deem

appropriate and just.

Dated:  May 17, 2024

Respectfully submitted,

By:  */s/ Bruce E. Menken*

Bruce E. Menken
Menken Simpson & Rozger LLP

80 Pine Street, 33rd Fl.

New York, NY 10005

212-509-1616

bmenken@nyemployeelaw.com

Bryan Schwartz, Esq.
*Pro hac vice* application under submission
180 Grand Avenue, Suite 1380
Oakland, CA 94612
(510) 444-9300
Bryan@bryanschwartzlaw.com

EXHIBIT A

**CONSENT FORM AND DECLARATION**

I hereby consent to join a lawsuit against Savoya, LLC (hereinafter, "Savoya") as a Plaintiff to assert claims against Savoya for violations of the wage and hour laws of the United States and/or the state(s) where I worked for Savoya. During the past three years, there were occasions when I worked over 40 hours per week for Savoya and did not receive overtime compensation and/or minimum wage pay.

I worked for Savoya as a (please check all that apply):

☑ Chauffeur
☐ Other (Specify Title: _____)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*feaasd*                                     04/02/24
_____          _____
Signature                                      Date

Henry Cuhadar
_____
Print Name



**Fax or Mail To:**

**Bryan Schwartz Law**
**180 Grand Ave, Suite 1380**
**Oakland, CA 94612**
**FAX (510) 444-9301**

NYC
_____
Location(s) Worked (City/State)

03/01/19
_____
Approximate Dates of Employment with Savoya

CONSENT AND DECLARATION

**CONSENT FORM AND DECLARATION**

     I hereby consent to join a lawsuit against Savoya, LLC (hereinafter, "Savoya") as a Plaintiff to assert claims against Savoya for violations of the wage and hour laws of the United States and/or the state(s) where I worked for Savoya. During the past three years, there were occasions when I worked over 40 hours per week for Savoya and did not receive overtime compensation and/or minimum wage pay.

     I worked for Savoya as a (please check all that apply):
☑ Chauffeur
☑ Other (Specify Title: _Driver_____)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_Gurhan Ergezer (Apr 2, 2024 15:17 EDT)_     02/04/24
Signature               Date

Gürhan Ergezer
Print Name

**Fax or Mail To:**

**Bryan Schwartz Law**
**180 Grand Ave, Suite 1380**
**Oakland, CA 94612**
**FAX (510) 444-9301**

Emergency Contact

New York, New Jersey and Connecticut
Location(s) Worked (City/State)

June 2022 to December 2023
Approximate Dates of Employment with Savoya

CONSENT AND DECLARATION

1

**CONSENT FORM AND DECLARATION**

2

3    I hereby consent to join a lawsuit against Savoya, LLC (hereinafter, "Savoya") as a Plaintiff to assert claims against Savoya for violations of the wage and hour laws of the United States and/or the state(s) where I worked for Savoya. During the past six years, there were occasions when I worked over 40 hours per week for Savoya and did not receive overtime compensation and/or minimum wage pay.

4

5

6    I worked for Savoya as a (please check all that apply):
    ☑ Chauffeur

7        ☐ Other (Specify Title: _____)

8    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

9

10    _Maureen Frederique_ 04/16/2024
    Maureen Frederique (Apr 16, 2024 18:13 EDT)

11    Signature                                    Date

12    Maureen Frederique
    Print Name

13

14

15    **Fax or Mail To:**

16

17    **Bryan Schwartz Law**
**180 Grand Ave, Suite 1380**
18    **Oakland, CA 94612**
**FAX (510) 444-9301**
19

20

21

22    Tri-State area (New York, NY)

23    Location(s) Worked (City/State)

24    11/19/2017 to 3/1/2020

25    Approximate Dates of Employment with Savoya

26

27

28