UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
HENRY HUSEYIN CUHADAR
and GURHAN ERGEZER, *individually and on behalf*
*of others similarly situated*,

                                        Plaintiffs,

        v.

SAVOYA, LLC and DOES 1 THROUGH 50, inclusive,

                                   Defendants.
-----------------------------------------------------------------------x

**OPINION &
ORDER**

24-CV-3615
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiffs Henry Huseyin Cuhadar and Gurhan Ergezer (collectively, "Plaintiffs")[1] bring

this action individually and on behalf of all others similarly situated against Defendant Savoya,

LLC ("Defendant") and unknown "Does 1 through 50, inclusive," as owners and/or officers of

Defendant.  Dkt. No. 19.  Plaintiffs brings claims, pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Laws ("NYLL"), N.Y. Lab. Law §§

190 *et seq.*, 650 *et seq.*, arising out of Defendant's alleged failure to pay minimum wages and

overtime wages, as well as Defendant's alleged involvement in improper kickbacks that resulted

in the failed reimbursement of expenses. *See generally id.*  Plaintiffs further allege that Defendant

failed to provide "spread of hours" pay under the NYLL. Plaintiffs also bring state law claims

related to Defendant's purported failure to comply with notice and recordkeeping requirements

and Defendant's alleged unlawful deductions.  *Id.*

---

[1] Plaintiffs originally identified Maureen Frederique as a plaintiff in the original complaint.  Dkt. No. 1.
Ms. Frederique was removed from the caption of the Amended Complaint (Dkt. No. 19) and no longer is a
party to this action.

Presently before the Court is Defendant's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. Nos. 22, 27.[2]  Plaintiffs oppose Defendant's motion.  Dkt. No. 25.  For the reasons set forth below, the Court grants Defendant's motion and dismisses this action without prejudice to re-file in the proper venue.

## I.    Background

### A.    Factual Background

The following facts have been taken from the Amended Complaint and construed in the light most favorable to Plaintiffs.  *See TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 473 (2d Cir. 2011) (viewing facts in the light most favorable to the plaintiff); *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, -- F. Supp. 3d -- , 2025 WL 401109, at *2 (S.D.N.Y. Feb. 5, 2025) ("In assessing [the defendant's] motion to dismiss under Rule 12(b)(6), the Court is required to assume that all well-pleaded facts in the Complaint are true and view them in the light most favorable to [the plaintiff's] claims" (citing *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015))); *Ortho-Clinical Diagnostics, Inc. v. Mazuma Cap. Corp.*, No. 18-CV-6416 (CJS), 2019 WL 1082987, at *1 (W.D.N.Y. Mar. 7, 2019) (reciting factual background from the complaint on a motion to dismiss based on a forum selection clause).

Defendant, a Delaware corporation with its principal place of business in Dallas, Texas, "provides chauffeured ground transportation services to high-end clients in the New York City Metropolitan area, and nationwide."[3]  Dkt. No. 19 at ¶¶ 1, 15.  Defendant "derives nearly all of its

---

[2] As discussed *infra*, the undersigned U.S. Magistrate Judge was assigned as the presiding judge in this case as part of a Pilot Program, governed by Eastern District of New York Administrative Order 2023-23.   The parties consented to U.S. Magistrate Judge jurisdiction in this matter on July 24, 2024.  *See* Dkt. No. 14.

[3]   The Amended Complaint asserts that the Defendant Does' "true names and capacities are unknown to Plaintiffs," but that Plaintiffs believe they are "responsible in some manner for the occurrences herein alleged, and that the damages sustained . . . were proximately caused by such Doe Defendants."  Dkt. No. 19 at ¶ 16.  Plaintiffs represent that "when [Defendant Does'] true names and capacities are ascertained,

revenue from the provision of transportation services" by "rel[ying] on dozens of [d]rivers in New York and hundreds of [d]rivers nationwide to chauffer" corporate and individual clients. *Id.* at ¶ 18. Defendant allegedly considers the drivers "who provide those services independent contractors rather than employees." *Id.* Plaintiffs allege that Defendant pay its drivers "for each trip according to a predetermined Inclusive Rate Schedule, which proves for flat-fee payments based on distance or hourly payments for trips lasting more than two hours." *Id.* at ¶ 19. Plaintiffs explain that although drivers "have the right to decline assignments, in practice, [d]rivers who decline jobs are penalized by not receiving future jobs from [Defendant]." *Id.* ¶ 20.

The daily work of the drivers—assigned to specific clients, locations, and times for chauffeur services—is subject to "extensive control" by Defendant. *Id.* Defendant enforces "a strict dress code" for its employees, consisting of "a black suit, black tie, black belt, black socks, and black shoes. *Id.* at ¶ 21. It also requires drivers to "provide their own vehicles, which must be black (except for vans and motor coaches), less than three years old, and free of any visible damage to the exterior or interior." *Id.* at ¶ 22. The drivers must further adhere specific guidelines, including environmentally responsible vehicle-maintenance procedures (*id.*), vehicle interior standards (*id.* at ¶ 23), codes of behavioral conduct (*id.* at ¶¶ 24-25), and vehicle insurance requirements mandating a $1 million minimum liability insurance policy (*id.* at ¶ 26). Defendant "maintains the right to terminate Drivers, without cause, upon 30 days' written notice." *Id.* at ¶ 27.

Plaintiffs are drivers that were employed by Defendant. *See id.* at ¶¶ 13-14. Defendant employed Mr. Cuhadar as a driver from March 2019 to May 2023, whereby he provided driving

---

Plaintiffs will amend this complaint by inserting their true names and capacities herein." *Id.* To date, Plaintiffs have yet to identify these Doe Defendants, nor have they sought leave to amend their pleadings to substitute any named individual as a Doe Defendant.

services to the New York metropolitan area. *Id.* at ¶ 13. Defendant employed Mr. Ergezer as a "[s]ubdriver"[4] by Defendant through Mr. Cuhadar's corporate entity, HRC Enterprise Group. *Id.* at ¶ 14. Mr. Ergezer represents that he drove for Defendant (through Mr. Cuhadar's corporate entity) from June 2022 to December 2022. *Id.* According to Plaintiffs, the drivers employed by Defendant were classified as "independent contractors" rather than employees. *Id.* at ¶ 18.

According to the Amended Complaint, Plaintiffs—as well as other drivers employed by Defendant—"have worked full time for Defendant and do not have significant alternative employment while working for [Defendant]." *Id.* at ¶ 28. Plaintiffs allege that "[a]s a result of [Defendant's] misclassification of its Drivers as independent contractors, [Defendant] has failed to reimburse Drivers for employment-related expenses." *Id.* at ¶ 29. These failures include: "cost of obtaining their vehicles; operation costs associated with the vehicle such as fuel, maintenance, repair, cleaning, and licensing; insurance premiums; costs of purchasing and maintaining service for cellular phones and tablets required by [Defendant]; and costs of keeping vehicle stocked with umbrella, bottled water, and newspapers [per Defendant's policies]." *Id.*

Moreover, Plaintiffs claim Defendant failed to compensate Plaintiffs for overtime hours in excess of 40 hours per week in the state of New York and for minimum wage compensation for all hours worked despite "often work[ing] more than ten hours a day more than 40 hours a week," including "late nights, weekends, and holidays." *Id.* at ¶¶ 30-31, 34. Defendant purportedly failed to "itemize the total hours worked on wage statements furnished to Plaintiffs" (*id.* at ¶ 36); "provide annual notices that must be provided employees contained information required by New

---

[4] Plaintiffs explain that "[s]ubdrivers" are "persons who worked for [Defendant] under a [d]river that entered into a direct contractual relationship with [Defendant]." Dkt. No. 19 at ¶ 4. As part of the hiring process, Defendant required drivers to "enter the name of their corporate entity or franchise as the signing party." *Id.* Some of the driver's corporate entities, including Mr. Cuhadar's, "employed [s]ubdrivers, who also drove for and were controlled by [Defendant] throughout the relevant statutory period." *Id.*

York law" (*id.*); and "properly maintain[] payroll records showing the actual hours worked each day" by Plaintiffs (*id.* at ¶ 37).  Plaintiffs' service agreement with Defendant thus failed to "encompass the whole employment relationship."  *Id.* at ¶ 39.

Plaintiffs further allege that drivers employed by Defendant "were not able to cruise for customers on their own, and they could not accept passengers who attempt to hail the Drivers on the street without a prior reservation made through [Defendant]."  *Id.* at ¶ 33.  Plaintiffs were also unable to provide independent driving services or work for other companies like Uber or Lyft without Defendant's consent or else face discipline.  *Id.*  Plaintiffs thus "depended on Defendant[] for the opportunity to render their services and receive pay."  *Id.*

## B.    Relevant Procedural Background

On May 17, 2024, Plaintiffs filed the instant action against Defendant.  *See generally* Dkt. No. 1.   Plaintiffs allege that this suit arises under federal question jurisdiction under 28 U.S.C. § 1331.  *See id.* at ¶ 9; *see also* Dkt. No. 19 at ¶ 9.

On July 24, 2024, the parties consented to U.S. Magistrate Judge jurisdiction before the undersigned to conduct all proceedings and to order the entry of final judgment.  *See* Dkt. Nos. 13-14.

After Defendant indicated its intent to file a Rule 12 motion in response to the Compliant (*see* Dkt. No. 12), the Court held a pre-motion conference on July 25, 2024.  The Court set a briefing deadline for the motion and stayed discovery until August 20, 2024.  *See* Minute Entry and Order dated July 25, 2024.  Defendant filed its first motion to dismiss for failure to state a claim on August 1, 2024.  Dkt. No. 18.

On August 2, 2025, Plaintiffs amended the Complaint.  Dkt. No. 19.  On August 20, 2024, the Court held a status conference.  Minute Entry dated Aug. 20, 2024.  After discussing the

Amended Complaint, Defendant agreed to voluntarily withdraw its initial motion to dismiss. *Id.*
The Court set the briefing deadline for Defendant's motion to dismiss the Amended Complaint
and further directed the parties to submit briefing as to whether the stay of discovery should be
lifted. *Id.*

On September 11, 2024, the Court extended the stay of discovery pending resolution of
Defendant's motion to dismiss the Amended Complaint. *See* Dkt. No. 24. The Court tolled the
statute of limitations for putative Op-in Plaintiffs to the action from September 11, 2024 to the
date Defendant's motion to dismiss is resolved. *Id.* at 14.

### C.    Defendant's Motion

On August 28, 2024, Defendant filed the instant motion to dismiss the Amended
Complaint. Dkt. Nos. 22, 22-1. Defendant moves the Court pursuant to Rule 12(b)(6) to dismiss
Plaintiffs' claims, alleging that the Eastern District of New York is not the proper forum. Dkt. No.
22-1 at 11-31. Specifically, Defendant alleges that the employment contract between Plaintiffs
and Defendant contained a forum selection clause that rendered Dallas County, Texas as the "sole
and exclusive" venue for all proceedings "arising out of" the contract. *Id.* at 11. The relevant
clause of the agreement provides:

> Governing Law. This Agreement will be governed by and construed in accordance
> with the laws of the State of Texas, without giving effect to any choice of law or
> conflict of law provision or rule. The courts of competent jurisdiction located in
> *Dallas County, Texas shall have sole and exclusive jurisdiction* over any
> proceeding relating to or arising out of this Agreement.

Dkt. No. 22-2 at § 11(g) (emphasis added). Accordingly, Defendant asserts that the forum
selection clause is binding because it was reasonably communicated and mandatory in nature, that
it covers the claims presently at issue, that all Plaintiffs are bound by the provision, and that

Plaintiffs cannot rebut the presumptive enforceability of the provision as set forth by the Supreme

Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  *Id.* at 13-31.

Plaintiffs oppose Defendant's motion.  *See* Dkt. No. 26-1.  Plaintiffs argue that Defendant's

arguments are unfounded, that its duties arise under wage laws rather than the contract, that the

forum selection clause was not reasonably communicated, and that its enforcement would be

unreasonable and unjust in contravention of New York's public policy.  *Id.* at 8-20.

## II.   <u>Legal Standards</u>

### A.   **Forum Selection Clauses**

In the past, the Second Circuit has generated "a well-established practice" for the

"enforcement of a forum selection clause through a Rule 12(b) motion to dismiss." *See*

*TradeComet.com LLC*, 647 F.3d at 474 (citing cases).  Those cases noted that the Supreme Court

was yet to articulate "the proper procedural mechanism to request dismissal of a suit based upon a

valid forum selection clause." *See, e.g.*, *id.*; *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817,

822 (2d Cir. 2006) ("The Supreme Court has not specifically designated a single clause of Rule

12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum

selection clause, nor have we" (internal quotations and citations omitted)); *Carl Zeiss Microscopy,*

*LLC v. Vashaw Sci.*, Inc., No. 19-CV-3540 (VB), 2020 WL 85195, at *3 (S.D.N.Y. Jan. 2, 2020)

("Courts in this Circuit have considered forum selection clauses under Rule 12(b)(1) for lack of

subject matter jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state

a claim." (citing *New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir.

1997))).

In 2013, the Supreme Court clarified that "the appropriate way to enforce a forum selection

clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," rather

than by way of Rule 12(b)(3). *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). The Court in *Atlantic Marine*, however, "reserved decision as to whether a party bringing an action for breach of contract might obtain dismissal under Rule 12(b)(6)." *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 n.3 (2d Cir. 2014)

Multiple courts in this Circuit have similarly construed *Atlantic Marine* to permit Rule 12(b)(6) to be used to seek dismissal based on a forum selection clause. *See, e.g.*, *Mazuma*, 2019 WL 1082987, at *4 ("Accordingly, the Second Circuit rule . . . affirming the use of Rule 12(b) to seek dismissal based on a forum selection clause, remains good law at least with respect to Rule 12(b)(6)"); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262 (NRB), 2015 WL 4634541, at *30 n.59 (S.D.N.Y. Aug. 4, 2015) ("*Atlantic Marine* does not disturb Second Circuit precedent holding that a court may enforce a forum selection clause by granting a motion to dismiss [pursuant to Rule 12(b)(6)]"); *see also U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 14-CV-1017 (VAB), 2015 WL 4393576, at *4 (D. Conn. July 16, 2015) ("The Court in *Atlantic Marine* specifically reserved decision on whether Rule 12(b)(6) might be used to enforce a forum selection clause.").

But regardless of the proper standard of review for a motion to dismiss pursuant to a forum selection clause—be that under Rule 12(b)(6) or *forum non conveniens*—the clarification offered in *Atlantic Marine* "does not appear to alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause." *Martinez*, 740 F.3d at 216. In this vein, a court reviewing a motion to dismiss for *forum non conveniens* "typically relies on pleadings and affidavits," *id.*, viewed in light most favorable to the plaintiffs. *DeBello v.*

8

*VolumeCocomo Apparel, Inc.*, 720 F. App'x 37, 38 (2d Cir. 2017); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).[5]

**B.    Federal Rule of Civil Procedure 12(b)(6)**

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the Court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a

---

[5] Defendant argues that "this is not a *forum non conveniens* matter," as Defendant has only filed a Rule 12(b)(6) motion. *See* Dkt. No. 27 at 9 n.3. The Court agrees, especially as neither side has briefed the issue of *forum non conveniens* herein.

narrow universe of materials.  Generally, we do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## III.   Discussion

### A.    Dismissal under Fed. R. Civ. P. 12(b)(6)

#### 1.    Factors for Dismissal Based on Forum Selection Clause

A forum selection clause within a contract is "'*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances,'" *TradeComet.com*, 647 F.3d at 475 (quoting *Bremen*, 407 U.S. at 10), or if the clause "was invalid for such reasons as fraud or overreaching." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (citing *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 721 (2d Cir. 1982)).  The Court affords "'substantial deference' to the forum selected by the parties, particularly where this choice 'was made in an arm's-length negotiation by experienced and sophisticated businessmen.'"  *Id.* (quoting *New Moon*, 121 F.3d at 29).

The Second Circuit employs a four-part test in determining whether to dismiss a claim based on a forum selection clause.  *See Phillips*, 494 F.3d at 383.  "To determine whether there is an enforceable forum selection clause, courts in this Circuit consider the following factors: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, for example, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Idle Media, Inc. v. Create Music*

10

*Grp., Inc.*, No. 24-CV-00805 (JLR), 2024 WL 5009713, at *7 (S.D.N.Y. Dec. 6, 2024) (citing *Martinez*, 740 F.3d at 217).  If these factors are satisfied, the forum selection clause is deemed "presumptively enforceable" and can be overcome only by a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Idle Media, Inc.,* 2024 WL 5009713, at *7 (quoting *Phillips*, 494 F.3d at 383-84); *see also Rabinowitz v. Kelman*, 75 F.4th 73, 81 (2d Cir. 2023) (detailing four-part framework).

Federal law governs enforcement of a contractual provision for forum selection given that "questions of venue and the enforcement of forum selection clauses are essentially procedural" in nature.  *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *Martinez*, 740 F. 3d at 220; *Korean Press Agency, Inc. v. Yonhap News Agency*, 421 F. Supp. 2d 775, 778 (S.D.N.Y. 2006); *Indymac Mortg. Holdings, Inc. v. Reyad,* 167 F. Supp. 2d 222, 243 (D. Conn. 2001) (applying federal law in determining enforceability of forum selection clause under Rule 12(b)(6)); *Garcia v. S. Grover, CPA, PLLC*, No. 18-CV-3000 (AT) (RWL), 2018 WL 5818106, at *3 (S.D.N.Y. Oct. 19, 2018) (applying federal law in construing forum selection clause in FLSA action).[6]

### 2.    The Forum Selection Clause was Reasonably Communicated

Defendant has satisfied its first showing that the provision was reasonably communicated

---

[6]  The Court recognizes that the Second Circuit has held, where an agreement contains a forum selection clause and a choice of law provision, that "contractual choice of law governs the interpretation of a forum selection clause, i.e. steps two and three of the inquiry, whereas federal law determines its enforceability, i.e. step four of the inquiry." *MBC Fin. Servs. Ltd. v. Bos. Merch. Fin., Ltd.*, 704 F. App'x 14, 17 n.1 (2d Cir. 2017) (citing *Phillips*, 494 F.3d at 384-85).  That line of cases, however, involve diversity actions centered upon forum selection and choice of law provisions that implicate the laws of other countries to govern the contract.  *See id.* (involving laws of Switzerland); *Phillips*, 494 F.3d at 384 (involving English law); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196 n.1 (2d Cir. 2015) (involving Canadian law).  Because this suit arises under federal question jurisdiction and because federal law would be applied to the claims at the selected venue of the instant forum selection clause, the Court opts to follow similar cases in applying federal law to each of the *Bremen* factors.  *See, e.g.*, *Garcia*, 2018 WL 5818106, at *3.

to Plaintiffs. "A forum selection clause is reasonably communicated where it was 'phrased in clear and unambiguous language.'" *Ally Bank v. Webster*, 406 F. Supp. 3d 356, 361 (D. Vt. 2019) (quoting *Magi XXI, Inc. v. Stato Delia Citta del Vaticano*, 818 F. Supp. 2d 597, 604-05 (E.D.N.Y. 2011)).

Here, the forum selection clause was reasonably communicated to Plaintiffs. The clause was contained in the main body of the agreement in standard font and in formatting conventions consistent with the rest of the contract. *See* Dkt. No. 22-2 at § 11(g). The language unequivocally states that courts within "Dallas County, Texas shall have sole and exclusive jurisdiction over any proceeding relating to or arising out of this Agreement." *Id.* Additionally, Mr. Cuhadar's signature appears at the bottom of the signed agreement. *See id.* at 10.

Courts in this Circuit have found similar provisions clearly communicated the selection of a governing forum to satisfy the first prong of the test. *See Magi XXI*, 818 F. Supp 2d at 605 (finding forum selection clauses in agreements reasonably communicated because they were clear, unambiguous, and appeared in standard font in the main body of the contracts); *Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. 14-CV-597 (DNH), 2015 WL 2074501, at *5 (N.D.N.Y. May 4, 2015) (finding clause reasonably communicated that appeared as a standard section in the main body of the signed agreement that was clear and unambiguous); *Arial Techs., LLC v. Aerophile S.A.*, No. 14-CV-4435 (LAP), 2015 WL 1501115, at *3 (S.D.N.Y. Mar. 31, 2015) (same); *Safeco Ins. Co. of Am.*, 2015 WL 4393576, at *6 (holding forum selection clause was reasonably communicated because it was unambiguously written in the subcontract at issue)

Contrary to Plaintiffs' contention, nothing suggests that Defendant intended to hide the provision by "tucking it away into a provision expressly labeled as one that pertains to choice of law regarding the terms of the agreement." Dkt. No. 26-1 at 14. The forum selection clause was

12

located under the subheading titled "Governing Law" and consisted of two sentences: one articulating that Texas state law controls interpretations of the contract, and one delineating that the courts in Dallas County possess exclusive jurisdiction over proceedings "relating to or arising out" of the agreement. Dkt. No. 22-2 at § 11(g). The second sentence of the paragraph, containing the provision, is the logical outgrowth of the first sentence explaining what law governs disputes relating to the contract—both of which concern Texas.

Moreover, no authority cited by Plaintiffs indicate that a forum selection clause must be its own independent clause within a contract to be reasonably communicated. *See* Dkt. No. 26-1 at 13-14; *see, e.g.*, *Saye v. First Specialty Ins. Co.*, No. 14-CV-5946 (JG) (LB), 2015 WL 1737949, at *4 (E.D.N.Y. Apr. 16, 2015) (factoring language, placement, and clarity in finding forum selection clause reasonably communicated); *U.S. Pipelining, LLC v. Bancker Constr. Corp.*, No. 14-CV-5566 (DLI) (JO), 2016 WL 5314855, at *4 (E.D.N.Y. Sept. 22, 2016) (considering the placement and express language of the provision in finding it reasonably communicated); *Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 3-CV-5262 (JFK), 2004 WL 421793, at *5 (S.D.N.Y. Mar. 5, 2004) (emphasizing whether the contract at issue was subject to an arm's-length business agreement). Rather, and as explained, the clause here was within the main body of the contract—in the same formatting and font and in clear and unambiguous language—at the bottom of which Mr. Cuhadar's signature appears.

Thus, Defendant has established that the forum selection clause was reasonably communicated to Plaintiffs.

### 3.    The Forum Selection Clause is Mandatory Rather Than Permissive

Defendant has also shown that the forum selection clause at issue is mandatory in nature. "A forum selection clause is deemed permissive if it confers jurisdiction in one forum without

excluding jurisdiction elsewhere." *Idle Media*, 2024 WL 5009713, at *7 (citing *Leasing Serv. Corp. v. Patterson Ents., Ltd.*, 633 F. Supp. 282, 284 (S.D.N.Y. 1986)).  Conversely, a forum selection clause is mandatory when it expressly specifies jurisdiction and venue "with mandatory or exclusive language." *Macsteel Int'l USA Corp. v. M/V Larch Arrow*, 354 F. App'x 537, 539 (2d Cir. 2009).

Here, the relevant clause of the contract explicitly limits the jurisdiction "the courts of competent jurisdiction located in Dallas County, Texas," which has "sole and exclusive jurisdiction over any proceeding relating to or arising out of this agreement."  Dkt. No. 22-2 at § 11(g).  The clause thus unequivocally confers exclusive jurisdiction to the designated forum and incorporates obligatory venue language, a reading that Plaintiffs do not challenge.  *See TecFolks, LLC v. Claimtek Sys.*, 906 F. Supp. 2d 173, 177 (E.D.N.Y. 2012) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language").

Accordingly, Defendant has shown that the forum selection clause at issue is mandatory and not permissive.

> **4.    The Forum Selection Clause Encompasses the Claims and Parties at Issue**

Concerning the third factor, Defendant has shown that the forum selection clause includes the claims alleged by Plaintiffs in the Amended Complaint.  Plaintiffs challenge this notion by arguing that the forum selection clause at issue does not govern the instant dispute because "the FLSA and the NYLL duties at issue here and independent of any contractual duties, and the contract signed by Cuhadar only arises as part of Defendant's defenses."  Dkt. No. 26-1 at 9.

To determine whether FLSA and related state law claims fall within the ambit of a forum selection clause, the Court must analyze "the breadth and specificity" of the provision's language.

14

*See, e.g.*, *Garcia*, 2018 WL 5818106, at *3 (articulating that whether an FLSA claim falls within an agreement's forum selection clause "turns on the breadth and specificity of the forum selection clause" and collecting cases); *Gill v. J.G. Wentworth Home Lending, LLC*, No. 19-CV-80591 (RLR), 2019 WL 13234224, at *2 (S.D. Fla. July 8, 2019) ("The scope of the forum selection clause dictates whether FLSA claims may be subject to forum selection clauses in an employment contract or agreement"); *Pacheco v. St. Luke's Emergency Assocs., P.C.*, 879 F. Supp. 2d 136, 140 (D. Mass. 2012) ("'[I]t is the language of the forum selection clause itself that determines which claims fall within its scope.'" (quoting *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 19 (1st Cir. 2009))); *Ruifrok v. White Glove Rest. Servs., LLC*, No. 10-CV-2111 (DKC), 2010 WL 4103685, at *5 (D. Md. Oct. 18, 2010) (examining breadth of language of the clause to determine if FLSA claims fell within the forum selection clause).

Courts in this Circuit have identified two types of forum selection clauses that differ depending on the language prescribed: "The narrower category includes terms such as 'arise out of,' 'arise from,' or 'arising under,' whereas the broader category includes terms such as 'in connection with,' 'relating to,' or 'associated with.'" *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012); *Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 444 (S.D.N.Y. 2022) (same); *but cf. Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (finding no difference between the two phrases and construing both broadly to encompass non-contract claims). Provisions that implicate the former category, including the words "arise out of," do not encompass "all claims that have some possible relationship with the contract," *Phillips*, 494 F.3d at 389, but instead require some sort of "causal connection." *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001).

On the other hand, forum selection provisions using the word "related" or "relating" are

broader than those using the phrase "arising out of." *See Coergis*, 241 F.3d at 128; *Charter Oak Oil Co. v. Applied Underwriters, Inc.*, No. 17-CV-0689 (SRU), 2018 WL 1046787, at *5 (D. Conn. Feb. 26, 2018) ("The Second Circuit has generally given the phrase 'related to' an expansive reading"). This is so because the word "related" calls for some connection or reference, and "related to" is "equivalent to the phrases 'in connection with' and 'associated with' and synonymous with the phrase 'with respect to,' and 'with reference to[.]'" *Coergis*, 241 F.3d at 128; *see TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370 (S.D.N.Y. 2010) (construing forum selection clause with language including "relating to" and "arising out of" within the broader category); *accord John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997) (finding clause with "arising under" narrower than "arising in relation to").

Here, the forum selection clause falls within the broader category because it includes both terms "relating to" and "arising out of." Dkt. No. 22-2 at § 11(g) ("The courts of competent jurisdiction located in Dallas County, Texas shall have sole and exclusive jurisdiction over any proceeding *relating to or arising out* of this Agreement" (emphasis added)); *see TradeComet.com*, 693 F. Supp. 2d at 379 (construing forum selection clause with both phrases "relating to" and "arising out of" within the broader category). The clause is therefore applicable to proceedings that are connected or associated with or in reference to the employment agreement. Plaintiffs' claims in the operative Complaint undoubtedly fall within this expansive category: they allege that Defendant failed to fully compensate them for the work they performed as chauffeurs under their employment contract with Defendant.

That Plaintiffs seek statutory remedies for their allegations in the Amended Complaint does not render the forum selection clause inapposite. The provision made no distinction as to the specific types of claims to which it may apply, but instead contains expansive, inclusive language.

*See In re Libor-Based Fin.*, 2015 WL 4634541, at *29 ("the applicability of a forum selection clause does not depend on whether the nature of the underlying action sounds in contract or tort or derives from a statute" (cleaned up)); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (applying forum selection clause in contract for claims stemming from antitrust statutes); *SLSJ, LLC v. Kleban*, No. 14-CV-390 (CSH), 2015 WL 1973307, at *15 (D. Conn. Apr. 30, 2015) (construing forum selection clause broadly to include not only claims for breach of contract but also those based in tort).

Courts have found forum selection clauses containing similarly broad language to encompass FLSA claims stemming from employment contracts. *See, e.g.*, *Sharpe v. Ally Fin., Inc.*, No. 17-CV-189 (GCM), 2017 WL 5078900, at *1 (W.D.N.C. Nov. 3, 2017) (finding FLSA claims subject to forum selection clause that included language "in connection"); *Goodly v. Check-6, Inc.*, No. 16-CV-1936 (CLB), 2016 WL 3090293, at * (E.D. La. June 2, 2016) (same); *Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 790 (N.D. Ill. 2013) (construing language in forum selection clause "directly or indirectly relates to or arises out of" broadly to encompass FLSA claims); *Rahimi v. Mid Atl. Pros., Inc.*, No. 18-CV-00278 (CAB) (KSC), 2018 WL 3207383, at *3 (S.D. Cal. June 29, 2018) (applying forum selection with language "[a]ny litigation in connection with this Agreement" to FLSA claims); *cf. Garcia*, 2018 WL 5818106, at *4-*5 (finding FLSA claims outside of forum selection clause that did not include broadening language).

Plaintiffs proffer a lengthy citation to authority they believe supports their position. Dkt. No. 26-1 at 9-10. A close review of those decisions, however, bolsters the Court's determination instead. The cases relied upon by Plaintiffs—applying the same general principles as those articulated above—simply involved narrower forum selection clauses than the one presently at issue. *See, e.g.*, *Garcia*, 2018 WL 5818106, at *5 (finding language that the forum selection clause

17

shall "control this Agreement" narrow); *Pacheco*, 879 F. Supp. 2d at 140-41 (interpreting language "derived out of this [employment] agreement" narrow based on dictionary definition); *Crouch v. Guardian Angel Nursing, Inc.*, No. 7-CV-00541 (TAW), 2009 WL 3738095, at *3 (M.D. Tenn. Nov. 4, 2009) (finding language in provision "to enforce any provision of [the Agreement]" to only pertain to contract disputes); *Perry v. Nat'l City Mortg., Inc.*, No. 05-CV-891 (DRH), 2006 WL 2375015, at * (S.D. Ill. Aug. 15, 2006) (explaining forum selection clause had limiting language to only "this Agreement"); *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-CV-1437 (DWF) (SRN), 2005 WL 3054594, at *3 (D. Minn. Nov. 14, 2005) (finding limiting language in "this Contract"); *Garcia v. Golden Abacus Inc.*, No. 16-CV-6252 (LTS), 2017 WL 2560007, at *1-*2 (S.D.N.Y. June 13, 2017) (involving arbitration provision that explicitly narrowed claims to breach of contract and tort claims, with no mention of the FLSA or any other statute); *Fuller v. Goldstar Est. Buyers Corp.*, No. 10-CV-5839 (SJC), 2011 WL 809429, at *3 (N.D. Ill. Mar. 1, 2011) (declining to apply forum selection clause to FLSA claims that did not arise from the parties' performance of the agreement as defined by provision); *cf. Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005) (construing the defendant's set-off claim as a permissive counterclaim which did not fall under the ambit of the forum selection or choice of law provisions because it arose from a different transaction); *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020) (acknowledging language like "relating to" and "arising from" ordinarily signals broad terms, but were narrowed to apply only to specific disputes by surrounding language in the arbitration clause); *Warman v. Am. Nat'l Standards Inst.*, No. 15-CV-5486 (RA), 2016 WL 3676681, at *3 (S.D.N.Y. July 6, 2016) (including contract with only a choice of law provision and no forum selection clause); *Burnett v. Physicians' Online, Inc.*, No. 94-CV-2731 TPG, 1997 WL 470136, at *12 (S.D.N.Y. Aug. 15, 1997) (same).

Plaintiffs further claim that Mr. Ergezer—as a non-signatory to the contract with Defendant—is not bound by the forum selection clause. Dkt. No. 26-1 at 18. Plaintiffs contend that "[Mr.] Ergezer never signed or saw the Agreement at all" and therefore is not bound by the provision because it was not foreseeable. *Id.* Whether a non-signatory is bound by a forum selection clause falls under the third prong of the test: "whether the claims and parties involved in the suit are subject to the forum selection clause." *Magi XXI*, 714 F.3d at 721-22.

But "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases). "[I]t is equally clear that a non-signatory can enforce a forum selection clause in only a limited set of circumstances," where "the non-signatory is 'closely related' to a signatory." *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 460 (S.D.N.Y. 2021) (quoting *Vuzix Corp. v. Pearson*, No. 19-CV-689 (NRB), 2019 WL 5865342, at *5 (S.D.N.Y. Nov. 6, 2019)); *see also Magi XXI*, 714 F.3d at 723 ("We hold that a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory").

"Generally speaking, courts have found parties to be so 'closely related' that enforcement of a forum selection clause is 'foreseeable' in two kinds of situations: 'where the non-signatory had an active role in the transaction between the signatories or where the non-signatory had an active role in the company that was the signatory.'" *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y. 2018) (quoting *Prospect Funding Holdings, LLC v. Vinson*, 256 F.Supp.3d 318, 325 (S.D.N.Y. 2017)). "A non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the

19

signatory party's interests or conduct." *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 258 (E.D.N.Y. 2013) (quoting *Weingard v. Telepathy, Inc.*, No. 5-CV-2024 (MBM), 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005)). "Other courts have found that a close business relationship between a non-party and a party to an agreement is an important consideration in determining whether a forum selection clause in the agreement is enforceable against the non-party." *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-3557 (CPS), 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) (collecting cases).

Here, the Amended Complaint explains that Mr. Ergezer "worked for [Defendant] as [a] Driver[]" and "drove for [Defendant] as a [s]ubdriver under Plaintiff Cuhadar's corporate entity, HRC Enterprise Group" from June of 2022 to December of 2022. Dkt. No. 19 at ¶¶ 5, 14. Mr. Cuhadar and Mr. Ergezer were signatories to the employment agreement. Dkt. No. 22-2 at § 11(g). Mr. Ergezer's claims are directly related—and indeed identical—to Mr. Cuhadar's claims, which stem from Mr. Cuhadar's contractual employment relationship with Defendant. As an employee of Mr. Cuhadar's corporate entity, it was foreseeable to Mr. Ergezer that Mr. Cuhadar's agreement with Defendant served as the source of contractual authority under which Mr. Ergezer's status as a driver for Defendant was predicated. *See Universal Grading Serv.*, 2009 WL 2029796, at *16 (finding non-signatory closely related and thus could foresee being bound by forum selection clause where the claims were "substantially identical with regard to each defendant"); *Magi XXi*, 714 F.3d at 724 (finding non-signatory closely related where the non-signatory knew the signatory "as the source of contractual authority granted" to the non-signatory by the contract containing the forum selection clause)

Further, Mr. Ergezer was effectively a subcontractor to Defendant as an employee of Mr. Cuhadar's corporate entity. Courts have found that a signatory principal may enforce a contractual

forum selection clause against a non-signatory subcontractor, as the principal-subcontractor relationship satisfied the "closely related" standard. *See Affiliated FM*, 328 F. Supp. 3d at 336 (recognizing this holding); *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 324 (S.D.N.Y. 2017) (collecting cases); *Philippe NYC I LLC v. Philippe W. Coast, LLC*, No. 14-CV-9858 (NRB), 2016 WL 1183669, at *8 (S.D.N.Y. Mar. 24, 2016) (same).

In sum, Mr. Ergezer is closely related to the signatories, Mr. Cuhadar and Defendant, such that it was foreseeable that he would be bound by the forum selection clause. Accordingly, Defendant has established that Plaintiffs are presumptively bound by the forum selection clause under Mr. Cuhadar's agreement with Defendant.

### 5. The Forum Selection Clause Is Not Unreasonable, Unjust, or Invalid

Having established that the forum selection clause is presumptively enforceable, the burden shifts to Plaintiffs to show that enforcement of the provision "'would be unreasonable, unjust or that the clause was invalid for such reasons as fraud or overreaching.'" *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 450 (E.D.N.Y. 2013) (Bianco, J.) (quoting *Phillips*, 494 F.3d at 383). A forum selection clause is unenforceable if "(1) its incorporation into the agreement was the result of fraud or overreaching; (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state." *Id.* (citing *Roby*, 996 F.2d at 1363). In establishing that a forum selection clause should not be enforced, the opposing party bears a "heavy burden of proof." *New Moon*, 121 F.3d at 32; *Zaltz*, 952 F. Supp. 2d at 450; *Magi XXI*, 818 F. Supp. 3d at 610; *accord Alabsi v. Savoya, LLC*, No. 18-CV-06510 (KAW), 2019 WL 1332191 (N.D. Cal. Mar. 25, 2019) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)).

Here, Plaintiffs have failed to carry their heavy burden. First, the Court has determined that the forum selection clause is presumptively enforceable, as it was reasonably communicated to Plaintiffs, mandatory, and covers all the claims alleged in the Amended Complaint. Therefore, the Court does not find any evidence of fraud or overreaching, nor do Plaintiffs raise such allegations. Second, no submission by Plaintiffs suggest that they will be deprived of their day in court if the case is litigated in the selected forum, nor that the forum's applicable law would divest them of a remedy.

Plaintiffs contend that the underlying policy of the NYLL favors retention of the case in the instant forum, arguing that the "Statement of Public Policy" in Article 19 of the statute explains "[t]here are persons employed in some occupations *in the state of New York* at wages insufficient to provide adequate maintenance to themselves and their families." Dkt. No. 26-1 at 15 (emphasis in original). Plaintiffs allege that "[a]pplication of Texas law in Texas courts to prevent New York drivers from asserting their New York minimum wage claims here would conflict with the fundamental public policy of New York." *Id.*

Plaintiffs, however, conflate the choice of the forum with the substantive law that will be applied. Although it is true that the forum selection clause is accompanied by a choice of law provision (*see* Dkt. No. 22-2 at § 11(g)), the present issue before the Court pertains only to whether Plaintiffs' allegations were properly lodged in the present jurisdiction. Disposition of whether the Eastern District of New York is the appropriate forum does not necessitate any determination into the merits of whether the choice of law clause is valid as contained in Plaintiff's employment contract with Defendant.

Furthermore, Plaintiffs fail to show that federal courts in the chosen forum in Dallas (*i.e.* the United States District Court for the Northern District of Texas) would foreclose the ability to

litigate their claims or the availability any relevant remedies. Indeed, cursory review of employment actions in Texas-federal courts reveal suits involving both the FLSA and the NYLL. *See, e.g.*, *Izzio v. Century Golf Partners Mgmt., L.P.*, No. 14-CV-03194 (BML) 2019 WL 10589568, at *1 (N.D. Tex. Feb. 13, 2019) (involving wage-and-hour class action brought under the FLSA and NYLL), *aff'd*, 787 F. App'x 242 (5th Cir. 2019); *Hardin v. Texian Grp., Inc.*, No. 22-CV-111 (PB), 2024 WL 1144269, at *1 (S.D. Tex. Mar. 15, 2024) (involving NYLL class action suit); *Oliver v. Aegis Commc'ns Grp., Inc.*, No. 8-CV-828 (EK), 2010 WL 11618301, at *2 (N.D. Tex. Sept. 21, 2010) (involving suit with both FLSA and NYLL claims); *Dittmann v. D.B. Zwirn & Co., L.P.*, No. 09-CV-402 (MH), 2010 WL 519692, at *7 (S.D. Tex. Feb. 8, 2010) (applying New York law to NYLL claims alleged in the suit). Therefore, Plaintiffs will still be able to seek the appropriate remedies if they prevail on the claims alleged in the Amended Complaint even in the venue subject to the forum selection clause.

Even if the remedies differed between the instant forum and federal courts in the selected forum, the Second Circuit has found that such differences are ordinarily "insufficient to overcome the presumptive enforceability of the forum selection clause" absent a strong showing from the opposing party. *See Du Quenoy v. Am. Univ. of Beirut*, 828 F. App'x 769, 772 (2d Cir. 2020) (citing *Martinez*, 740 F.3d at 229). Here, Plaintiffs have failed to make a sufficiently strong showing to suggest that the differences—if any—between the law of this Circuit and of that in the selected forum undermines the presumptive enforceability of the clause at issue.

At bottom, the Court is not persuaded that a federal court in Texas will be unable to serve the underlying policies upon which the NYLL is based such that the forum selection clause, as agreed to by Plaintiffs, is unreasonable. Accordingly, Plaintiffs have failed to carry their "heavy burden of proof" in challenging the presumptive enforceability of the forum selection clause.

Therefore, the forum selection clause is enforceable, and Defendant's motion should be granted on that basis.

> **B.      The Court Dismisses the Amended Complaint**

In light of the above, the forum selection clause contained in the employment agreement between Plaintiffs and Defendant is enforceable.  The Court therefore dismisses the instant action without prejudice so that Plaintiffs can re-file in the appropriate forum.  *See Mazuma*, 2019 WL 1082987, at *7 (granting motion to dismiss based on forum selection clause); *accord Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014) (affirming dismissal of the plaintiff's complaint on forum selection clause grounds but modifying the judgment to dismissal without prejudice so that the action could be re-filed in the proper venue).

The Court also declines to undergo a transfer analysis under 28 U.S.C. § 1404(a).  Courts will typically transfer actions pursuant to Section 1404(a) if transfer was briefed by the parties or when a Rule 12(b)(3) motion is implicated.  *See, e.g.*, *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 246 (S.D.N.Y. 2023) (collecting cases).  Neither of these considerations are presently at issue.

## V.      <u>Conclusion</u>

Accordingly, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.  Plaintiffs' claims are dismissed without prejudice to re-file in the proper venue. The Clerk of the Court is respectfully directed to terminate all pending deadlines and hearings in this action and to close the case.

Dated:       Brooklyn, New York
             February 17, 2025                    **SO ORDERED.**

                                             */s/ Joseph A. Marutollo*   
                                          JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge